IN THE MATTER OF THE PETITION OF GEORGE C. LOW ET AL., TO ANNUL CHAPTER 351 OF THE LAWS OF 1915.

Argued September 22, 1915—Decided October 14, 1915.

1. Under the procedure authorized by *Pamph. L.* 1873, *p.* 27, to have the Supreme Court declare null and void a law or joint resolution, the fact that such law or joint resolution was not duly passed and approved as required by the constitution must be established by the petitioner by clear and convincing evidence.
2. In determining whether a bill or joint resolution has been duly passed and approved, the journals of the two houses of the legislature, although competent sources of evidence, are not the only sources, and inferences may be drawn from other evidence, *aliunde* the journals, *e. g.*, the certificates by the speaker of the house and the president of the senate.

On petition and order.

This is a proceeding under "An act providing for decreeing and making known that certain laws and joint resolutions have become inoperative and void." *Pamph. L.* 1873, *p.* 27; *Comp. Stat., p.* 4978.

The object of the proceeding is to have it judically determined that chapter 351 of the laws of 1915 was not duly passed by both houses of the legislature or duly approved as required by the constitution of this state. Chapter 351 of

the laws of 1915, as filed by the secretary of state in his office and as printed in the pamphlet laws of 1915, on page 657, is "An act to consolidate and merge the bureau of industrial statistics with the department of labor." This bill with this title was a committee substitute for Senate Bill No. 5, the title of which was "An act creating a department to be known as the 'Board of Labor and Industry,' and vesting therein all the powers and duties now devolved by law upon the department of Labor and the Bureau of Industrial Statistics." Senate Bill No. 5 was introduced on January 12th, 1915, and after a first reading was referred to the committee on the judiciary. On February 16th, 1915, the committee on the judiciary reported Senate Bill No. 5 by committee substitute, which is chapter 351 of the laws of 1915.

This statute is now attacked because of the confused and inaccurate entries in the journals of the two houses of the legislature by which the bill at its various stages was at times given the title of the committee substitute, and at others the title of the original Senate Bill No. 5, and in other ways incorrectly recited. The passed bill was vetoed by the governor for reasons that could apply only to the committee substitute, and it was this bill that was passed over the governor's veto by both houses, although the confusion of the journal entries continued to appear. The bill actually delivered to the secretary of state and now on file contains thereon the endorsements of the speaker of the house and the president of the senate that the bill was read three times in each house and duly passed the same, and that the bill having been returned by the governor with his objections to the senate was passed by both houses, the objections of the governor to the contrary notwithstanding.

The bill thus on file is chapter 351 of the laws of 1915 now under attack.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH and BLACK.

For the petitioners, *Martin P. Devlin.*

For the state, *Herbert Boggs,* assistant attorney-general (*John W. Wescott,* attorney-general, *Theodore Backes,* second assistant attorney-general, on the brief).

The opinion of the court was delivered by

GARRISON, J.   The case of *Pangborn* v. *Young* was decided by this court at the June term, 1866 (32 *N. J. L.* 29). That case decided that where an act of the legislature duly authenticated as such was on file in the office of the secretary of state, an exemplification of such act in due form was conclusive evidence of its existence and contents and that it was not competent for the courts to go behind such attestation or to receive the evidence of the journals of the two houses to show that the law as actually passed was variant from that on file in the office of the secretary of state.

On March 3d, 1873, the act of the legislature under which the present proceeding is taken was approved. *Pamph. L.* 1873, *p.* 27.

By force of this statute this court, upon the exhibition to it of a petition by the attorney-general or by two or more citizens setting forth his or their reasons for believing that an act on file in the office of the secretary of state was not duly passed by both houses or approved as required by the constitution, was empowered to inquire in a summary way into the facts and circumstances alleged in such petition and "if satisfied that the law or joint resolution mentioned therein was not duly and constitutionally passed by both houses of the legislature or duly approved to decree the same or any part thereof to be null and void."

The legal rule to be deduced from the fundamental doctrine of Pangborn *v.* Young, taken in connection with the subsequent legislation by which such doctrine was mitigated in its application, is that he who by such permission of the legislature asserts the invalidity of one of its enactments, which but for such permission would be inexpungable, must establish the truth of what he asserts by clear and convincing evi-

dence. This is the ordinary rule as to the character of the proof by which a rebuttable presumption resting upon a high order of evidence may be overthrown. Independently of this judicial rule the legislature in the present statute laid down substantially the same rule when it provided that its enactment might be declared void by this court "if satisfied that the law mentioned in the petition had not been duly and constitutionally passed." To be satisfied from the evidence means in this context the same thing as being convinced by it.

The burden of proof, and the nature and effect of the evidence by which such burden must be borne being thus established, it remains only to consider whether such burden has been so borne by the petitioners—that is to say, whether the petitioners from the evidence have satisfied the court that chapter 351 of the laws of 1915 was not duly passed or approved. Upon this question of fact, and of the weight and character of the evidence, we have no difficulty in reaching the decision that the required burden has not been borne by the petitioners.

They have, indeed, shown to a demonstration that the journals were so kept as to be confusing, if not actually misleading, and if the burden were upon the state to establish affirmatively from this source of evidence alone' that chapter 351 was duly enacted in all of its stages, it may well be that it would fail just as the petitioners have done. The journals, however, although a competent source of evidence, are not the sole source, and when the proper inferences are drawn from other sources, *aliunde* the journals, of equal, if not superior, character, so far from being satisfied that chapter 351 was not duly passed, we are satisfied that it was duly passed, and the confusion and inconsistencies of the journals have no tendency to shake the conviction thus arising from a consideration of all the facts and circumstances, which are what the statute requires us to consider.

Thus, when the speaker of the house and the president of the senate each certifies that chapter 351 was read three times in his house and duly passed the same and was passed over the governor's veto, we are not satisfied that these statements

are false because of the omission of the clerical employe who wrote up the journal to make a proper entry or even if he made an entry inconsistent with such solemn official certificate.

If it be said that the constitution does not provide for such official certification, the answer is that neither does it provide for many of the entries in the journal, the absence of which is urged to be fatal to the validity of the bill, although, of course, the real answer is contained in Chief Justice Beasley's exposition of this parliamentary common law in Pangborn *v.* Young.

The internal evidence arising from the special ground of Governor Fielder's objection to the passed bill, and the passage of such bill over his veto, show most cogently that the bill dealt with was the committee substitute which the majority favored, which alone contained the provision to which the governor objected.

So, also, when the entry in the journal speaks of the second reading of the bill and makes no mention of its first reading, we are not thereby satisfied that the bill never had a first reading, but, on the contrary, and in reliance upon the ordinary use of English, indulge in the justifiable inference that a thing that actually happens for the second time has once before happened for the first time. And so on with a number of similar arguments and doubts arising from the confusion in the sole source of evidence to which the petitioners look.

That this court is not confined to this single source of evidence or required to give any paramount force to its omissions or inconsistencies, is evident from the provisions of the statute which accords to the court the widest scope in the matter of evidence without even mentioning the journals of the houses, still less prescribing them as the sole source of testimony.

We conclude that the petitioners have failed to satisfy us that chapter 351 of the laws of 1915 was not duly passed or approved, and for this reason the order made in this proceeding, which is in effect a rule to show cause, is discharged, with costs.